## THIBODAUX v. PITTMAN BROS. CONST. CO. et al.

### No. 2177.

Court of Appeal of Louisiana. First Circuit.

Dec. 12, 1940.

L. O. Pecot, of Franklin, for appellant.

St. Clair Adams & Son, of New Orleans, for appellees.

OTT, Judge.

The suit is to recover damages in the sum of $2,035.25 against the Pittman Brothers Construction Co. and its insurance carrier, the Central Surety and Insurance Corporation, on account of personal injuries and property damage to his truck which plaintiff claims to have sustained on June 20, 1937. Plaintiff was going east on U. S. Highway 90, driving his Ford truck about eleven o'clock on the morning of the above date, and a truck and trailer belonging to the defendant construction company, loaded with a gravel hopper, driven by an employee of this company, was going in the opposite direction toward New Iberia. The accident occurred a few miles east of Morgan City in Assumption Parish, on a straight paved highway, eighteen feet wide.

The pertinent part of plaintiff's petition setting out the alleged negligence of the defendant company may be summarized as follows: That the truck and trailer driven by its employee was loaded with a gravel hopper or bin sitting on top of and attached to iron beams with an over width load of 13 feet and 2 inches on the body of the truck and trailer; that the iron beams projected on each side of the truck far beyond the body of the truck and trailer; that the truck and trailer were not equipped with proper flags as required by law; that at the time plaintiff encountered said truck and trailer, the weather was cloudy and raining, and when he was about to pass the truck and trailer, the driver thereof pulled the wheels to the left to the black line, thereby throwing the projecting iron beam into the side of the road on which plaintiff was traveling; that in order to avoid being struck by said projecting iron beam, plaintiff was compelled to pull his truck to his right onto the shoulder of the road where, the ground being wet and slippery, he lost control of his truck and turned over on the side of the road, causing the injury and damage complained of. In fine, the acts of negligence charged to the construction company consisted in the unlawful manner in which the truck and trailer were loaded, the failure to provide proper red flags thereon, and the act of the driver in pulling the loaded over width truck and trailer to the left so that the projection extended so far into plaintiff's lane of traffic that he could not pass without getting off the road.

The construction company and its insurer filed a joint answer admitting that the company owned the truck and trailer and that it was loaded with a gravel hopper, and that iron beams projected to some extent beyond the body of the truck and trailer. It is also admitted that the driver of the truck and trailer was acting in the course of his employment with the construction company, but they deny that the driver was guilty of any of the acts of negligence charged in the petition. In the alternative and in case it is found that defendants were in any way negligent, it is alleged that the plaintiff was guilty of contributory negligence in operating his truck at an excessive speed considering all the circumstances; in not having his truck under such control that he could pass the truck and trailer approaching from the opposite direction without getting on the shoulder of the road and without being able to control his truck; and if it is found that any part of the truck and trailer did project over onto any part of plaintiff's side of the road, then it is charged that plaintiff should have seen the same and brought his truck under such control as to avoid the accident. Pleading still further in the alternative, defendants allege that plaintiff had the last clear chance to avoid the accident.

Judgment was rendered in favor of the defendants, rejecting the demands of the plaintiff, and he has appealed.

Learned counsel for plaintiff seems to think that the trial judge found for the defendants because of the contributory negligence of the plaintiff. A reading of the reasons for judgment leads us to believe that he rejected plaintiff's demands for the reason that he found that the proof failed to show that the accident was caused from any negligence on the part of the construction company, or its employee. The judge concludes his findings in the following language: "The sole and only cause of this accident, * * * is attributed to plaintiff's own negligence and imprudence in operating his car. He was driving too fast, and when he took the wet and soggy shoulder, it caused him to lose control of his car, which was the proximate cause of the accident and to which defendant did not in any way contribute."

Taking up the three principal charges of negligence against the construction company, we find that this company got permission from the Highway Commission under authority of Section 4 of Act 21 of 1932, the law in force at the time, to haul a sand and gravel hopper twelve inches over width

on both sides from Slidell to New Iberia, provided the truck travel in the daylight, and provided it was not over loaded and had red flags on it to warn traffic. A highway patrolman inspected the truck and trailer at Slidell before the driver left with the over width load. The patrolman saw that the proper red flags were placed on the sides and rear of the truck and that it was equipped with clearance lights and flares. He required the driver of the truck to drive in the iron beam which he thought was projecting too far out on the left side, and after this had been done by the driver by using a mall, the patrolman permitted him to leave with instructions not to drive at night. The patrolman testified that the driver of the truck got some red cloth and made it into wide strips and tied a strip on each of the four corners, one in the center and hung one on the projecting iron. This officer testified that the truck was properly equipped to travel on the highway when he gave the driver permission to leave.

The width of the load on the truck and trailer was slightly over thirteen feet. It appears from the testimony that the mixer was loaded a foot or so to the right side of the truck which would make the projection more on the right side than on the left or traffic side of the truck. From the body of the truck on the left side the load and iron beam extended over about two feet or perhaps a little over two feet, the testimony not being very definite on that point. Section 5 of the above mentioned act limits the width of a vehicle that may travel on the highways to eight feet. It was because of this excess width that a permit was necessary for the transporting of this over width load.

As the construction company secured a permit to carry this over width load, and as the law does not specify the kind or number of red flags to be placed on the truck to warn traffic of the over size load, the question arises as to whether or not the red flags put on the truck and trailer were sufficient to warn traffic. According to the driver, the flags on the truck at the time of the accident were the same ones that were on it when the truck left Slidell with the permission of the highway officer there. The contention is made that these flags were only small red streamers or strips tied on the side of the truck and could not be seen by a motorist approaching from the opposite direction for any considerable distance.

Mr. Carl Peterson, highway police sergeant stationed at Morgan City, was called to the scene of the accident soon after it occurred. The driver of the truck and trailer with the over size load did not know that plaintiff had run off the road and turned over his truck until he had gone on a mile or two toward Morgan City when he was overtaken by some motorists and was informed by them that he had "knocked" a man off the road. Sergeant Peterson had the truck and trailer stop at Morgan City. He testified that the over hang on the left side of the truck and trailer was a little over two feet, and four red flags pieces of red cloth about two inches wide and two feet long were tied on the side of the truck and on the end of the projecting iron beam. The sergeant expressed some doubt as to whether or not these streamers were sufficient to warn traffic of the projection on the traffic side, however, it appears that the driver was permitted to continue on to New Iberia without being required to put on any larger or any additional red flags. The sergeant stated that the bulk of the load was on the body of the truck—by this we understand that the load extended very little, if any, over the left side of the body of the truck, but that the principal projection over the left side of the truck was the iron beam which extended out a little over two feet.

As the truck and trailer were loaded and equipped according to the instruction of a highway patrolman before it left Slidell, and as the driver seems to have complied fully with the directions of this officer, we see no negligence in the manner in which the truck was loaded and equipped with red flags. We can hardly see what else could have been done in this respect other than to follow the instructions of the officer who seems to have been very particular in seeing that the truck was properly loaded with the over size load and equipped with warning flags before he gave permission for it to travel on the highway.

The most serious charge of negligence is that the driver of defendant's truck pulled it to the left after passing a car some 200 feet from plaintiff and brought the left wheels of the truck and trailer to the black line in the center of the road, thus causing all that part of the body of the truck and load, as well as the projecting iron beam, to the left of the wheels to protrude over into plaintiff's lane of traffic. It is obvious that if this is true that part of the body of

the truck and the load to the left of the left wheels, together with the projecting iron pin, must have extended over the center line of the road more than the projection of the iron pin which itself projected two feet or more over the side of the body.

Rule 5 of Section 3 of Act 21 of 1932 requires the driver of a slow moving machine, or vehicle, to drive as closely as possible to the right hand edge or curb of the highway. In view of this rule and the nature of the load on this truck, it was the duty of the driver to keep as far to the right as was safe, which means that the left wheels should have been kept from two to three feet from the center line. The only direct testimony by the driver of the truck on this point is the general statement that at no time from New Orleans to Morgan City did he drive on his wrong side of the road; that there was never any reason for him to drive on the wrong side of the road.

The plaintiff testified that he was driving east at a speed of 35 to 38 miles per hour following a car ahead of him about 200 feet; that the defendant's truck pulled to its right for this car to pass and then pulled back toward the center of the road. At another place in his testimony, he says that the truck began to pull to its left when it was within 50 or 60 feet of him, and then pulled over to the black line. We are unable to determine from plaintiff's testimony just when he first saw this on-coming, over size object ahead of him, but we do gather that he was not able to determine its size and projection over into his lane of traffic until the truck had passed the car 200 feet or more ahead of him.

The best that we can make out of plaintiff's testimony is that the defendant's truck began to pull toward the center of the road after it passed the car ahead of plaintiff about 200 feet, and that plaintiff at that distance saw that the oncoming truck had an over load, but he did not see the iron pin projecting out from the truck and did not realize that it was taking up a good part of his lane of traffic until he was within 50 or 60 feet of the truck, and it was then that he realized he could not pass on the pavement and pulled to his right putting his right wheels off onto the shoulder and lost control of his truck. He undertakes to make it appear that the width and protrusion of the load on the truck loomed up on him rather suddenly, and he realized that

there was not room to pass. He says that less than three feet of pavement on his side of the road was left for him to pass, yet he admits that the left wheels of the oncoming truck got no further than the edge of the center line. Obviously, the overhang of the truck and load on the left from the wheels was not six feet. In fact, this overhang could hardly have been half that distance, leaving ample room for plaintiff to pass on the pavement had he been going at a proper speed and had he kept proper control of his truck.

Plaintiff admits that he did not slow down although he saw this over loaded truck more than 200 feet ahead of him. He says at the speed he was going he could stop in 25 or 30 feet, yet we have no explanation from him as to why he did not stop or at least slow down after he admits seeing this over size load ahead of him for 200 feet. He traveled 50 or 60 feet after he admits seeing the projecting iron pin. But we do not deem it necessary to discuss further those phases of the case tending to show contributory negligence on the part of the plaintiff as we find no reason to disagree with the trial judge who found that no negligence was shown on the part of the construction company or the driver of its truck.

Like the trial judge, we can see no reason for the driver of the truck with the over size load on it and who was driving at a speed of less than fifteen miles per hour to pull his truck over toward the center of the road. He was constantly passing cars and was about to pass plaintiff's truck just ahead of him. If he did pull his truck over to the center of the road in the face of plaintiff's oncoming truck, he either did not see it or else he was guilty of such lack of care and caution as to amount to a criminal act. We are not able to point out any error on the finding of fact on this point made by the trial judge. We agree with him that the proximate cause of the accident was the failure of plaintiff to slow down his speed after he saw the over size load ahead of him and his failure to have his truck under such control as to be able to pass without getting off the pavement, and no acts of negligence on the part of the construction company or its driver contributed to the accident.

For these reasons, the judgment appealed from is hereby affirmed at the cost of the appellant in both courts.